BRYANT *v.* COMMON COUNCIL OF THE CITY OF DETROIT.

1. INTOXICATING LIQUORS—LICENSES—SALOONS—MUNICIPAL COR-
PORATIONS.

> A saloon keeper was not entitled to a preference over other ap-
> plicants for retail license because he had been engaged in
> the business during 1909, and during the year preceding his
> application, which he filed before April 15th, 1911, 1,772 ap-
> plications having been filed, of which the council of the city
> of Detroit granted the maximum allowed by law, *i. e.*, 1,552.
> Mandamus does not lie in such case to compel the granting of
> relator's application, which the council was authorized to re-
> ject under Act No. 291, Pub. Acts 1909.[1]

2. SAME.

> As to applications filed after April 15th, the council is required
> to consider them in the order of filing.

Certiorari to Wayne; Mandell, J.  Submitted June 29,
1911.  (Calendar No. 24,649.)  Decided March 29, 1912.

Mandamus by Brazil J. Bryant against the common
council of the city of Detroit to compel the respondent to
grant relator's application for a retail liquor license.
From an order allowing the writ, respondent brings cer-
tiorari.  Reversed.

*Richard I. Lawson* (*P. J. M. Hally*, of counsel), for
appellant.

*Francis H. Warren*, for appellee.

BIRD, J.  The relator petitioned the Wayne circuit
court for a writ of mandamus to compel the respondent to
issue to him a liquor license.  The writ was granted, and

---

[1] Discretion of local authorities as to the number of licenses to be
granted for the sale of intoxicating liquors, see note in 18 L. R. A.
(N. S.) 386.

Control by mandamus of decision of licensing officer as to fitness
of applicant, see note in 27 L. R. A. (N. S.) 1195.

the respondent has removed the proceeding to this court for review.

The relator was keeping a saloon in the city of Detroit in April, 1909. He was granted a license for the year 1910, but was refused one for 1911. He filed his application on January 24, 1911, and it was denied April 25, 1911. On April 27th he filed a second application and this was denied May 2, 1911. It is conceded that the relator has none of the disqualifications mentioned in the statute. The maximum number of licenses the council could grant in 1911 was 1,552. These were all granted from the 1,772 applications on file previous to April 15th. There are now a large number of applications on the waiting list which were filed previous to April 15th.

Under this state of facts, the relator contends that it was the duty of the respondent to grant him a license, and he puts it upon the ground that he was engaged in the business in April, 1909; that it was the duty of the council to prefer those who were engaged in the business in April, 1909, to those who were not.

The law under which this contention is made is section 39 of Act No. 291, Pub. Acts 1909:

"When applied for in accordance with the provisions of this act, bonds shall be approved by the local board, board of trustees, council or common council in each township, village and city for retail liquor dealers, not to exceed the number doing business in said township, village or city in the month of April, nineteen hundred nine. *Provided*, that if after this act takes effect the number of retail liquor dealers in any township, village or city shall be in excess of the ratio of one to each five hundred inhabitants, according to the last United States census, no license or licenses shall be issued to any person or persons to take the place of such license or licenses as shall have been revoked as in this act provided, or that shall voluntarily have been surrendered, until the ratio of the licenses granted, and the saloons in such township, village or city shall not exceed one saloon for every five hundred inhabitants thereof, according to the last United States census: * * * *Provided, further*, if the applications for such

license filed on or before April fifteenth of any year equal or exceed the maximum number permissible under this section, no further application shall be considered; and if such applications exceed such maximum number the township board or village or city council shall grant the maximum number, and shall determine which of the applications so filed shall be granted: *Provided, further,* that when an applicant is found to be ineligible under the terms of this act or when said applicant fails to furnish a proper bond or when a license is revoked or determined from any cause, such township board or village or city council shall grant further applications, if any are on file, up to such maximum number, giving preference to those filed on or before April fifteenth, and after that to applications in the order in which the same are filed."

This statute makes it very clear that, when the applications are in excess of the maximum number to be granted, the council "shall determine which of the applications so filed shall be granted." In April, 1911, respondent had 1,772 applications on file. It could grant only 1,552. It is obvious that some of the applications had to be denied. This duty was left to the discretion of the council, subject to the statutory disqualifications. If all of the 1,772 applicants were free from the statutory disqualifications, the council had the right, in the exercise of its discretion, to choose one and reject another without giving any reason therefor.

Relator's counsel argues that those who were in business in April, 1909, must be preferred to those who were not so engaged. If the council is bound to observe any such preference, the duty must be found in the statute. The statute nowhere lays down any such rule of selection. The council is enjoined by the statute to prefer those who file their applications prior to April 15th to those who file after that date, and to consider and grant licenses from those who file after that date in the order in which they are filed. Having commanded these preferences, it is reasonable to suppose that, had the legislature intended to prefer those who were in business in April, 1909, to those who were not, it would have included it among the

other preferences mentioned. The legislature having dealt with the question of preferences, and having omitted the one contended for, we must presume it did not intend to create any such preference.

Section 39 is not aimed at persons nor locations, but the whole effort of that section is to point out the *number* of saloons permissible under the varying conditions.

The relator cites the case of *Hanold* v. *Stambaugh Common Council,* 163 Mich. 242 (128 N. W. 233), as an authority for his position. The case has no application. That case dealt with a situation where two applications were filed after April 15th. Only one could be granted. The council were directed to proceed to consider the applications in the order filed as the statute directs. Among those who file after April 15th, the council has no discretion as it has among those who file before the 15th, but must consider the applications in the order filed. It is our opinion that the relator has failed to establish his right to the writ.

The order granting the writ is reversed. No costs will be allowed.

MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred with BIRD, J.

BLAIR, J. I concur in the result because of the decision this day handed down in the case of *Rohde* v. *Wayne Circuit Judge* (168 Mich. 686 [135 N. W. 457]).

MOORE, C. J., concurred with BLAIR, J.